United States District Court
Middle District of Florida
Jacksonville Division

**YOLANDA JONES,**

    *Plaintiff,*

v.                                                                                 **NO. 3:21-cv-54-PDB**

**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

# Order

Yolanda Jones brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to challenge a final decision by the Acting Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Doc. 1.

The final decision is a decision by an administrative law judge (ALJ) signed on May 19, 2020. Tr. 15–24. Jones argues the ALJ erred by finding her depression and anxiety non-severe. Doc. 25 at 2–6. The Acting Commissioner argues Jones shows no error. Doc. 26.

Summaries of the law, procedural history, and administrative record are in the ALJ's decision, Tr. 15–24, and the parties' briefs, Doc. 25, 26, and not fully repeated here.

## I. Background

Jones was born in 1973. Tr. 241. Before August 2017, she worked as a babysitter and welder. Tr. 288. Her date last insured is December 31, 2019. Tr. 286.

Jones applied for benefits in November 2017, alleging she is disabled from depression, anxiety, left-shoulder pain and swelling, left-knee pain from a cyst, arthritis, prolapsed bladder, and high blood pressure. Tr. 241–54, 297. She alleged she had become disabled on August 15, 2015, Tr. 241, but later amended the date to October 26, 2016, Tr. 34.

Jones proceeded through the administrative process, failing at each level. Tr. 1–6, 12–29, 64–109, 112–43, 146–67. This action followed. Doc. 1.

## II. The ALJ's Decision

The ALJ proceeded through the five-step sequential process in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Tr. 17–24.

At step one, the ALJ found Jones has not engaged in substantial gainful activity since the amended alleged onset date. Tr. 17.

At step two, the ALJ found Jones has severe impairments of degenerative disc disease, obesity, and dysfunction of major joints. Tr. 17. He found she has several non-severe impairments, including depression and anxiety. Tr. 18. According to the ALJ, Jones's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in [Jones's] ability to perform basic mental work activities and are therefore non-severe." Tr. 18.

In evaluating Jones's mental condition, the ALJ used the psychiatric review technique to rate Jones's degree of limitation in the four broad functional areas of the "paragraph B" criteria. Tr. 18.

The ALJ found Jones has a mild limitation in understanding, remembering, or applying information. Tr. 18. The ALJ explained:

> In a function report, [Jones] reported that her conditions affect her memory, ability to understand, and ability to follow instructions. However, she also reported that she can prepare her own meals; she can drive; she can shop in stores, by phone, and by computer; and she can pay bills, count change, and handle a savings account. Additionally, treatment records include examinations that have noted intact memory and orientation to time, person, place, and situation. As well, at a psychological consultative evaluation in February 2018, a mental status examination noted logical and goal oriented thought processes, no evidence of delusions or perceptual abnormalities, and orientation to person, place, and time. [Jones] was able to repeat six digits forward and four digits backward; she was able to spell "world" backwards; she recalled one of three objects after five minutes; her remote memory appeared to be intact; she was able to name the current U.S. president, several past U.S. presidents, one ocean, and the capital of Florida; she was able to perform serial seven subtraction, with three out of five being correct; she was able to perform mental addition of double digit numbers and simple multiplication; and she was able to interpret two common sayings. Accordingly, the undersigned finds no greater than a mild limitation in understanding, remembering, or applying information.

Tr. 18 (internal citations omitted).

The ALJ found Jones has no limitation in interacting with others. Tr. 19. The ALJ explained:

> In a function report, [Jones] reported that she has problems getting along with family, friends, neighbors, or others. However, she also reported that she can shop in stores. Additionally, treatment records do not show difficulty getting along with medical providers, staff, or others. As well, at a psychological consultative evaluation in February 2018, it was noted that [Jones] interacted appropriately with the office staff and interviewer; she was fully cooperative; and she was able to engage

>appropriately in conversation. Accordingly, the undersigned finds no limitation in interacting with others.

Tr. 19 (internal citations omitted).

The ALJ found Jones has a mild limitation in concentrating, persisting, or maintaining pace. Tr. 19. The ALJ explained:

>In a function report, [Jones] reported that her conditions affect her ability to complete tasks and ability to concentrate. However, she also reported that she can prepare her own meals; she can drive; she can shop in stores, by phone, and by computer; and she can pay bills, count change, and handle a savings account. Additionally, treatment records include examinations that have noted that [Jones] is alert and oriented. As well, at a psychological consultative evaluation in February 2018, a mental status examination noted that [Jones] was oriented to person, place, and time; she was able to repeat six digits forward and four digits backward; she was able to spell "world" backwards; she recalled one of three objects after five minutes; she was able to perform serial seven subtraction, with three out of five being correct; and she was able to perform mental addition of double digit numbers and simple multiplication. Accordingly, the undersigned finds no greater than a mild limitation in concentrating, persisting, or maintaining pace.

Tr. 19 (internal citations omitted).

The ALJ found Jones has a mild limitation in adapting or managing herself. Tr. 19. The ALJ explained:

>In a function report, [Jones] reported that she does not handle stress or changes in routine well. She also reported that she needs special reminders to take care of her personal needs and grooming and to take her medication. However, she further reported that she can prepare her own meals; she can drive; she can shop in stores, by phone, and by computer; and she can pay bills, count change, and handle a savings account. Additionally, at a psychological consultative evaluation in February 2018, it was noted that [Jones] drove herself to the evaluation; she interacted appropriately with the office staff and interviewer; and she was well-groomed and casually dressed. She also reported that she is capable of eating unassisted; her daughter helps her with her back while bathing; she can dress herself, but her daughter will come in and

4

>help; she is unable to clean, but she can cook; and she can manage her finances. Accordingly, the undersigned finds no greater than a mild limitation in adapting or managing oneself.

Tr. 19 (internal citations omitted).

The ALJ concluded, "Because [Jones's] medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in [Jones's] ability to do basic work activities, they are non-severe." Tr. 19.

The ALJ explained, "The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." Tr. 20. The ALJ added, "The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." Tr. 20.

At step three, the ALJ found Jones has no impairment or combination of impairments that meets or medically equals the severity of any impairment in the listings in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 20.

The ALJ found Jones has a residual functional capacity to perform light work with additional physical limitations. Tr. 20.

After summarizing the evidence and discussing various medical and state agency opinions, the ALJ evaluated a consultative opinion from Diana Benton, PsyD. (Tr. 759–62). Tr. 22. Dr. Benton opined Jones "may have

5

difficulty sustaining concentration and persistence in a work setting." Tr. 762. The ALJ found the opinion unpersuasive because Dr. Benton "did not clearly define [Jones's] mental limitations." Tr. 22. In contrast, the ALJ found opinions from state agency psychological consultants finding Jones's anxiety and depression non-severe and "mild" paragraph B findings, *see* Tr. 91, 103, 119, 135, "generally persuasive, as [Jones's] overall treatment history and mental status findings of record indicate no greater than mild limitations." Tr. 22.

At step four, the ALJ found Jones is unable to perform her past relevant work. Tr. 22.

At step five, the ALJ relied on the testimony of a vocational expert and found Jones can perform work as an "addresser," "table worker," or "inspector" and the jobs exist in significant numbers in the national economy. Tr. 23. The ALJ thus found she is not disabled. Tr. 24.

### III.  Standard of Review

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.*

If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Crawford v.*

6

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

### IV. Law and Analysis

At step two, an ALJ considers whether a claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To be severe, an impairment must have lasted or be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). The claimant has the burden of showing an impairment is severe. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

"Step two is a threshold inquiry." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Step two is "a reasonable administrative convenience designed to screen out groundless claims." *Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987). Only "the most trivial impairments" are rejected because a "claimant's burden at step two is mild." *McDaniel*, 800 F.2d at 1031. Still, the "mere existence" of an impairment does not show its effect on the claimant's ability to work. *Moore*, 405 F.3d at 1213 n.6.

An ALJ must consider the combined impact of all impairments whether severe or non-severe. 20 C.F.R. §§ 404.1523(c), 416.923(c).

7

Jones argues the ALJ erred by finding her depression and anxiety non-severe. Doc. 25 at 2–6. The Acting Commissioner argues she failed to meet her burden of proving she has a severe mental impairment or that her mental condition, whether severe or non-severe, limited her ability to work. Doc. 26 at 6–7. The Acting Commissioner observes,

> The health professionals who examined and treated [Jones] did not note objective mental status findings establishing that [Jones] had a severe mental impairment or work-related mental limitations, particularly for any consecutive twelve-month period. Examiners usually found that [Jones's] mood and affect were within normal limits; she had no psychological symptoms; she was bright and alert; she was oriented; she had normal insight and judgment (Tr. 388, 391, 397, 400, 410, 414, 428, 436, 526, 531, 538, 544, 548, 560, 569, 577, 584, 734, 738, 746-47, 1668). The treatment records provide substantial evidence that [Jones] did not have a severe mental impairment or any mental work-related limitations, particularly for any consecutive twelve-month period.

Doc. 26 at 7.

Contrary to Jones's argument, substantial evidence supports the ALJ's finding that Jones's anxiety and depression are non-severe. The evidence, cited by the ALJ, includes:

- records showing Jones's memory is intact, she is oriented to her surroundings, her thought processes are logical and goal-oriented, and she has no delusions or perceptual abnormalities;

- records showing Jones can spell *world* backwards, recall one of three objects after five minutes, name the current and several past United States presidents, name an ocean, name the capital of Florida, perform serial-seven subtraction with three of five being correct, perform mental addition of double-digit numbers, perform simple multiplication, and interpret commons sayings;

- records showing Jones got along with medical providers, interacted appropriately with office staff and an interviewer, was fully cooperative, and could engage appropriately in conversation; and

- Jones's own report that she prepares her own meals, eats unassisted, dresses herself with help, drives, shops in stores and online, manages her finances, pays bills, counts change, and handles a savings account.

Tr. 314–15, 411, 415, 760–61.

Jones argues the ALJ's finding that Jones is mildly limited in concentrating, persisting, or maintaining pace "is in direct conflict with the substantial medical evidence of record which includes a face-to-face examination by the Commissioner's psychologist [Dr. Benton] who opined that [Jones's] major depressive disorder and unspecified anxiety disorder may interfere with her mental ability to do work activities." Doc. 25 at 3.

This argument is unpersuasive. Jones fails to explain how a finding that she is mildly limited in concentrating, persisting, or maintaining pace "is in direct conflict" with an opinion that her depression and anxiety "may" interfere with her mental ability to work. Moreover, the standard is not whether evidence conflicts with the ALJ's finding but whether substantial evidence supports the finding. As discussed, substantial evidence supports the finding. The Court may not reweigh evidence.

Jones argues the ALJ's failure to find Jones's depression and anxiety severe precluded him from assessing the combined impact of severe depression and severe anxiety along with other severe impairments. Doc. 25 at 4. This argument likewise is unpersuasive. As required, the ALJ considered the combined impact of all of Jones's impairments.

Jones points to Dr. Benton's opinion that Jones "may have difficulty sustaining concentration and persistence in a work setting" (Tr. 762) and argues the ALJ may not substitute his opinion for Dr. Benton's opinion. Doc. 25 at 4–5. Contrary to Jones's argument, the ALJ evaluated the record evidence to determine Jones's residual functional capacity. Tr. 18–19. The ALJ did not substitute his opinion for Dr. Benton's opinion; he found Dr. Benton's opinion unpersuasive because Dr. Benton failed to clearly define Jones's mental limitations. Tr. 22.

Jones continues, "Based upon [Dr. Benton's] mental health expertise and [face-to-face] examination, the ALJ should have given proper weight to [her opinion] and include the major depressive disorder and unspecified anxiety disorder as severe impairments as required by *Winschel v. Commissioner of Social Security*, 'the ALJ must state with particularity the weight given to different medical opinions *and the reasons therefor*.' 631 F.3d 1176, 1179 (11th Cir. 2011) (emphasis added)[.]" Doc. 25 at 5. Whether Jones is attempting to argue the ALJ gave improper weight to Dr. Benton's opinion or inadequately explained the weight given is unclear. Either way, there was no error. Under the applicable regulations,* an ALJ "will not defer or give any specific evidentiary weight … to any medical opinion(s) or prior administrative medical finding(s) …." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must evaluate an opinion for supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and "other factors that tend to

---

*Effective March 27, 2017, the SSA revised its regulations regarding the evaluation of medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Because Jones applied for benefits in November 2017, the revised regulations apply.

10

support or contradict" the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). *Winschel* predates these regulations and is therefore inapplicable.

Jones argues the ALJ's failure to ask Dr. Benton to clarify her opinion of Jones's mental limitations resulted in "gaps in the record" and "the ALJ was left to guess and substitute his opinion[.]" Doc. 25 at 6.

A "claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Still, an ALJ has a duty to develop a full and fair record. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). "The ALJ's failure to fulfill his duty to fully develop the record, however, only necessitates a remand if the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Mosley v. Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 742 (11th Cir. 2015) (quoted authority and internal quotation marks omitted).

If a consultative examiner's report is inadequate or incomplete, the ALJ must contact the examiner to request missing information or prepare a revised report. 20 C.F.R. §§ 404.1519p(b), 416.919p(b). "If a consultative examination report does not include a statement about what the claimant can still do despite the impairments, the absence of such a statement will not make the report incomplete." *Davison v. Astrue*, 370 F. App'x 995, 998 (11th Cir. 2010) (cleaned up).

Here, the ALJ did not have to contact Dr. Benton to request missing information or prepare a revised report because Dr. Benton's report was not incomplete. And even if her report had been incomplete, her opinion that Jones

"may" have difficulty concentrating and persisting left no evidentiary gaps resulting in unfairness or clear prejudice, so remand would be unwarranted.

## V.    Conclusion

The Court **affirms** the Acting Commissioner's decision and **directs** the clerk to enter judgment for the Acting Commissioner and against Yolanda Jones and close the file.

**Ordered** in Jacksonville, Florida, on September 25, 2022.

*PATRICIA D. BARKSDALE*
*United States Magistrate Judge*

12